Stein, J.
(dissenting). Because in our view respondent New York State Emergency Medical Services Council (hereinafter SEMSCO) considered the relevant circumstances and accorded petitioner’s application the benefit of the statutory presumption, we respectfully dissent. We concur with Supreme Court’s conclusions that SEMSCO[11] recognized the presumption to which petitioner was entitled in determining its application for a certificate of public need and that such presumption was effectively rebutted by the information provided by Utica Ambulance Service, Inc., doing business as Kunkel Ambulance Service (hereinafter Kunkel).
A presumption is nothing more than “[a] legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts ... A presumption shifts the burden of production or persuasion to the opposing party, who can then attempt to overcome the presumption” (Black’s Law Dictionary 1223 [8th ed 2004]). Here, absent any explicit language to the contrary, the presumption afforded to petitioner pursuant to Public Health Law § 3008 (7) (b) is rebuttable and does not guarantee approval of petitioner’s application. While, as the majority notes, the presumption was intended to level the playing field between municipal and private applicants, it does not give municipalities a preference or advantage, nor does it completely obviate the requirement that *1474 petitioner meet a specific need of the population it proposes to serve; it merely creates a legal inference that such is the case.[12] Thus, the presumption permits Kunkel to respond to petitioner’s evidence with evidence to the contrary.[13]
Notably, in its initial application, the primary basis cited by petitioner for its assertion of a public need for its ambulance service was a prior lack of continuity of patient care, as well as limited availability on Kunkel’s part to provide services within the City of Utica. Although one SEMSCO member commented that petitioner’s submissions lacked statistical documentation to support such assertions, they were nevertheless sufficient— particularly given the presumption to which petitioner’s application was entitled — to shift the burden to Kunkel to demonstrate persuasive evidence of the absence of a need for petitioner’s services. To that end, Kunkel submitted the affidavits of its vice-president and finance officer, as well as its director of operations, video recordings and an “availability study,” all of which demonstrated that Kunkel had available ambulances, could successfully cover ambulance calls during fires and had consistently met Department of Health training, staffing and equipment standards. Kunkel also refuted petitioner’s assertion that it could provide greater continuity of service. Overall, mindful that we may not substitute our judgment for that of SEMSCO, we discern no basis to conclude that SEM-SCO’s determination — that Kunkel sufficiently rebutted petitioner’s argument that Kunkel’s services were inadequate to meet the public need without petitioner’s assistance — was “arbitrary, capricious or affected by error of law” (Matter of Senior Care Servs., Inc. v New York State Dept. of Health, 46 AD3d 962, 965 [2007]).[14]
Significantly, the record reflects that SEMSCO fully discussed *1475 and considered the presumptions afforded to petitioner and the evidence in support of and in opposition to petitioner’s application. Indeed, one SEMSCO member — who was also a member of REMSCO — articulated that “[t]here was much discussion about [the] presumption” at the REMSCO level and that Kunkel had overcome any presumption to which petitioner was entitled. Our review of the record also reveals that SEMSCO was troubled by the notion that petitioner’s true purpose in seeking to provide ambulance services was not to improve the continuity of care to its residents but, rather, to generate revenue. In our view, SEMSCO considered the relevant circumstances and accorded petitioner’s application the benefit of the presumption.[15] Thus, while we recognize the economic investment made by petitioner into the establishment of such services, we would affirm Supreme Court’s judgment.

. While acknowledging that SEMSCO, not the Regional Emergency Medical Services Council (hereinafter REMSCO), is statutorily responsible for making a final determination with respect to public need (see Matter of Tri-State Ambulance Serv. v State of N.Y. Dept. of Health, 114 AD2d 546, 547 [1985]), the majority nevertheless focuses on the manner in which REMSCO considered petitioner’s application. We disagree that any flaws in REMSCO’s process should somehow be attributed to SEMSCO. Accordingly, we are of the view that our review should center on whether SEMSCO properly considered the presumption.

. Notably, if the Legislature had intended to completely eliminate the requirement that a municipality demonstrate public need after performing satisfactorily during the initial two-year period, it could have explicitly “deemed” such requirement to have been met and/or imposed an irrebuttable presumption, but did not do so. In fact, an earlier version of the bill that ultimately passed (S 7660-A, A 10611-A) would have exempted municipal ambulance services from Public Health Law § 3008 (see Sponsor’s Mem, Bill Jacket, L 1992, ch 850).

. We also disagree with the majority’s unsupported assumption that Public Health Law § 3008 (7) was intended to replace Public Health Law § 3008 (6), a view that is contrary to well-recognized principles of statutory construction (see e.g. McKinney’s Cons Laws of NY, Book 1, Statutes §§ 98, 144, 231). Nevertheless, such difference of opinion is immaterial to the issue here.

. In view of the fact that petitioner was not previously required to demonstrate public need at all, since it was initially deemed to satisfy that require *1475 ment, we disagree with the majority’s criticism of REMSCO’s “look back” approach. Nor do we find it inappropriate to take into account the previously existing circumstances, in addition to examining the service provided during the initial two-year period and looking forward to the future ability to provide ambulance services. The record reflects that petitioner and Kunkel addressed all of these circumstances and, in our view, SEMSCO properly considered them.

. The comments of one of SEMSCO’s members referred to by the majority do not lead us to conclude otherwise. While we agree that the statute is not a model of clarity and there was undoubtedly some confusion on the part of this member, when viewed in the light of the entire record of SEMSCO’s proceedings subsequent to such comments, it is evident that the significance and effect of the presumption was clarified and discussed at some length.